**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

UNITED STATES DISTRICT COURT
FILED
MAY 15 2025
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*ex rel.* VERITY INVESTIGATIONS, LLC,<br><br>        *Plaintiff/Relator*,<br><br>v.<br><br>SETTERSTIX INC.; MAE-AMERIKA GMBH;<br><br>        *Defendants.* | Case No. 25-cv-418<br><br>**ORIGINAL COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729 *et seq.***<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**DO NOT PLACE IN PRESS BOX**<br><br>**Jury Trial Demanded** |

1



UNITED STATES DISTRICT COURT
FILED
MAY 1 5 2025
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

### *QUI TAM* COMPLAINT

## I.     INTRODUCTION

1.      This is a *qui tam* case, filed on behalf of the federal government, seeking to recover over $1.3 million (plus mandatory trebling) that Defendants wrongfully obtained in the form of two federal guaranteed loans by falsely certifying that it was a small business concern. Those loans were later forgiven, and the federal government paid the bill.

2.      The loans in question were provided by the Small Business Administration's ("SBA's") Paycheck Protection Program ("PPP"). The PPP was created by Congress near the start of the COVID-19 epidemic in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in 2020, and then received additional funding ($284 billion) in December 2020 in the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act." 15 U.S.C. § 636(a)(37).

3.      In April 2020, the SBA authorized a first series of PPP loans, which are known as "First Draw" PPP loans.

4.      In January 2021, SBA authorized a second series of PPP loans, widely referred to as "Second Draw" PPP loans.

5.      This case involves false applications for a First and Second Draw PPP loan.

6.      The PPP loans were made available only to "small" businesses. The SBA established a clear, bright-line rule for who counted as "small."

7.      For First Draw PPP loans, applicants were required to certify that they (both the applicant and its domestic and foreign affiliates) met the size standard—(a) collectively employed 500 or fewer persons, (b) met the SBA employee-based or revenue-based industry size standards, or (c) met the SBA alternative size standard that (i) the tangible net worth of the business is not

more than $15 million and (ii) the average net income for two fiscal years before the date of the application is not more than $5 million.

8.      For Second Draw PPP loans, applicants were required to certify that they (both the applicant and its domestic and foreign affiliates) collectively employed 300 or fewer persons.

9.      The Second Draw PPP loans created additional criteria that an entity with "significant operations" in the People's Republic of China could not own more than 20 percent of the small business applicant.

10.     Defendants falsely certified to the SBA that they met the size standard for a small business. As a direct result of those false statements, Defendants obtained First and Second Draw PPP loans totaling $1,303,462, which were later forgiven.

11.     Relator is an outside investigative company that detected Defendants' fraud by reviewing the Defendants' affiliate's consolidated financial reports. Those reports demonstrate that Defendants and their affiliates (1) had a tangible net worth that far exceeds the $15 million threshold, (2) had an average net income that far exceeds the $5 million threshold, (3) employed more than 500 employees during the relevant time period, and (4) had a parent with significant operations in China.

## II.   THE PARTIES

12.     Plaintiff Verity Investigations LLC ("Relator") is an investigative firm formed by two professionals with widespread experience in detecting and reporting fraud on the U.S. public fisc.

13.     Defendant Setterstix Inc. is a Delaware corporation with its principal place of business in Cattaraugus, New York.

14.     Defendant MAE Amerika GmbH is a German corporation with its principal place of business in Erkrath, Germany.

III.    **JURISDICTION AND VENUE**

15.    This action arises under the laws of the United States to redress violations of the Federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA").

16.    Subject-matter jurisdiction is conferred by 28 U.S.C. §§ 1331, 1345.

17.    Venue is proper, and this Court has personal jurisdiction over Defendants, because Defendants are "found" in this District. 31 U.S.C. § 3732(a).

IV.    **THE FALSE CLAIMS ACT**

18.    The FCA is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (July 28, 1986).

19.    A defendant violates the FCA when the defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

20.    Under the FCA, a claim includes a request for money. 31 U.S.C. § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment.

21.    In 2009, Congress amended the FCA through the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21 (May 20, 2009), making a defendant liable under the FCA when the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

22.    Under the FCA, the terms "knowing" and "knowingly" mean that the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

4

23.     No proof of specific intent to defraud the Government is required to show that a defendant acted knowingly under the FCA. 31 U.S.C. § 3729(b)(1)(B).

24.     The terms "knowing," "knowingly," "knowledge," "knows," and "knew," as used in this Complaint, have the meaning ascribed to them by the FCA.

25.     The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

26.     The FCA broadly defines a "claim" as "any request or demand . . . for money or property" that: "(i) is presented to an officer, employee, or agent of the United States," or "(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

27.     False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

## V.     NO "PUBLIC DISCLOSURE" AND RELATOR IS AN ORIGINAL SOURCE

28.     On information and belief, no "public disclosure" has been made of Defendants' false statements and fraud detailed herein. 31 U.S.C. § 3730(e)(4)(A).

29.     On information and belief, Defendants' fraudulent transactions have not been publicly disclosed in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or by the news media.

5

30.    Even if there had been a "public disclosure," that would not matter in this case because Relator is an "original source of the information" set forth in this complaint. 31 U.S.C. § 3730(e)(4)(A).

31.    Relator's knowledge is independent of and materially adds to any publicly disclosed aspects of the fraudulent transactions described herein. Among other things, Relator has "connected the dots" between (a) Defendants' affiliate's consolidated financial reports, and (b) Defendants' false certifications for the First and Second Draw PPP loans.

32.    Prior to filing this action, Relator voluntarily provided the Government with this complaint and all material evidence in Relator's possession relating to the fraudulent transactions.

## VI.    THE FIRST DRAW PPP LOAN PROGRAM

33.    To be eligible for a First Draw PPP loan, borrowers were required to meet one of the following criteria: "employs not more than the greater of" (1) "500 employees; or" (2) "if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, . . . operates," 15 U.S.C. § 636(a)(36)(D); or (3) meets the "alternative size standard" as of March 27, 2020 with (a) "maximum tangible net worth of the applicant is not more than $15,000,000"; and (b) "the average net income after Federal income taxes (excluding any carry-over losses) of the applicant for the 2 full fiscal years before the date of the application is not more than $5,000,000." 15 U.S.C. § 632(a)(5).

34.    The SBA's website explained "who may qualify" for a First Draw PPP loan. This was explained in an overview page of the website[1] and in the online "Frequently Asked Questions" document available on the website.[2]

---

[1] SMALL BUSINESS ADMINISTRTION, First Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/first-draw-ppp-loan.
[2] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders (as of April 29, 2020).

35.    The SBA's FAQ stated that "borrowers" were "required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)."[3]

36.    That regulation—13 C.F.R. § 121.301(f)—stated that when counting "employees," an applicant must include the employees of "all of its domestic and foreign affiliates." 13 C.F.R. § 121.301(f)(6).[4]

37.    That regulation defined affiliation broadly:

i.    Affiliation includes "affiliation based on ownership." "For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." *See* 13 C.F.R. § 121.301(f)(1).[5]

ii.    Affiliation may also arise "under stock options, convertible securities, and agreements to merge." *See* 13 C.F.R. § 121.301(f)(2).[6]

iii.    Affiliation may arise "based on management:" "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the

---

[3] SMALL BUSINESS and ADMINISTRATION, FAQ for PPP Borrowers and Lenders at 2 (as of April 29, 2020).
[4] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[5] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[6] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

Board of Directors or management of one concern also controls the Board of Directors or management of one or more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." *See* 13 C.F.R. § 121.301(f)(3).[7]

    iv.      Affiliation may arise "based on identity of interest:" "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate." *See* 13 C.F.R. § 121.301(f)(4).[8]

    v.      Affiliation may arise "based on franchise and license agreements:" "The restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee has the right to profit from its efforts and bears the risk of loss commensurate with ownership. SBA will only consider the franchise or license agreements of the applicant concern." *See* 13 C.F.R. § 121.301(f)(5).[9]

    38.      The SBA required borrowers to submit a First Draw borrower application form (SBA Form 2483) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

    39.      The SBA Form 2483 required the borrower to state its "Number of Employees."

---

[7] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[8] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[9] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

40.    The SBA Form 2483 then required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant . . . employs no more than the greater of 500 or [*sic*] employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry."

41.    The SBA Form 2483 then required the applicant's authorized representative to certify eligibility by signing a statement that "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)."

42.    The SBA Form 2483 also required the applicant's authorized representative to initial to "certify that the information provided in this application . . . is true and accurate," and to acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000 . . . ."

43.    The SBA guaranteed 100% of the outstanding balance of Defendant's First Draw PPP loan. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

VII.    **THE SECOND DRAW PPP LOAN PROGRAM**

44.    To be eligible for a Second Draw PPP loan, borrowers were required to meet three criteria: (1) have "[p]reviously received a First Draw PPP Loan," (2) "[have] no more than 300

employees," and (3) be able to "demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020."[10] 15 U.S.C. § 636(a)(37)(A)(iv).

45.     The SBA's website explained the 300-limit to borrowers. This was explained in an overview page of the website[11] and in the online "Frequently Asked Questions" document available on the website.[12]

46.     The SBA's FAQ document stated that this limit was "narrower" than the prior 500-employee limit for the earlier First Draw PPP loans.[13]

47.     The SBA's FAQ document warned borrowers that, unlike with the First Draw PPP loans, borrowers would not be allowed to qualify using "SBA's [other] established size standards (either revenue-based or employee-based) or the alternative size standard."[14]

48.     As with the First Draw PPP loan, the SBA's FAQ stated that "borrowers" were "required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)" when applying for a Second Draw PPP loan.[15]

49.     The SBA required borrowers to submit a borrower application Form (SBA Form 2483-SD) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

50.     The SBA Form 2483-SD required the borrower to state the "Number of Employees (including affiliates, if applicable)."

---

[10] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.
[11] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://perma.cc/R74F-68UQ?type=image (as of March 2021).
[12] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders (as of March 3, 2021).
[13] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders at 29 (as of March 3, 2021).
[14] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29 (as March 3, 2021).
[15] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 3 (as March 3, 2021).

51.    The SBA Form 2483-SD then required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant, together with its affiliates (if applicable) . . . employs no more than 300 employees."

52.    For the Second Draw PPP loans, Congress stated that "eligible entity . . . does not include . . . any business concern or entity for which an entity . . . that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership." 15 U.S.C. § 636(a)(37)(A)(iv)(III)(cc)(AA).

53.    The SBA Form 2483-SD then required the applicant's authorized representative to certify eligibility by signing a statement that:

> The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

54.    The SBA Form 2483-SD also required the applicant's authorized representative to initial to "certify that the information provided in this application . . . is true and accurate," and to acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000 . . . ."

55.    The SBA guaranteed 100% of the outstanding balance of Defendant's Second Draw PPP loan. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

## VIII. DEFENDANTS FALSELY CERTIFIED TO THE SBA ITS COMPLIANCE WITH THE FIRST AND SECOND DRAW PPP LOAN SIZE REQUIREMENTS

### A. BACKGROUND: DEFENDANTS AND THEIR AFFILIATES

56.    Defendant Setterstix Inc. ("Setterstix") is a Delaware corporation with its principal place of business located in Cattaraugus, New York.[16]

57.    Setterstix can be validly served with process via its registered agent at 850 New Burton Road Suite 201, Dover, DE 19904.[17]

58.    Defendant MAE Amerika GmbH ("MAE Amerika") is a German corporation with its principal place of business in Erkrath, Germany.[18]

59.    MAE Amerika can be validly served with process at 850 New Burton Road Suite 201, Dover, DE 19904.

60.    Setterstix is a manufacturer of cotton swabs, lollipop sticks, stirring sticks, scented sticks, etc. Setterstix is a wholly-owned subsidiary of GESCO Aktiengesellschaft ("GESCO Group").[19]

61.    MAE Amerika are part of MAE Machine and Apparatus Construction Götzen GmbH ("MAE Group"), headquartered in Erkrath, Germany.[20] MAE Group is a manufacturer of machines for various industries[21] and is a wholly-owned subsidiary of GESCO Group.[22]

---

[16] GESCO Aktiengesellschaft, *Consolidated Financial Statements for the Financial Year from 1 April 2019 to 31 December 2019*, Bundesanzeiger, July 2, 2020, https://www.bundesanzeiger.de/pub/de/start?17 (last visited Mar. 25, 2025).
[17] Delaware, Department of State, Setterstix Inc., https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx.
[18] GESCO Aktiengesellschaft, *Consolidated Financial Statements for the Financial Year from 1 April 2019 to 31 December 2019*, Bundesanzeiger, July 2, 2020, https://www.bundesanzeiger.de/pub/de/start?17 (last visited Mar. 25, 2025).
[19] GESCO Aktiengesellschaft, *Consolidated Financial Statements for the Financial Year from 1 April 2019 to 31 December 2019*, Bundesanzeiger, July 2, 2020, https://www.bundesanzeiger.de/pub/de/start?17 (last visited Mar. 25, 2025).
[20] MAE Group's Website – Contact, https://mae-group.com/en/contact/#elementor-toc__heading-anchor-2.
[21] MAE Group's Website – Home, https://mae-group.com/en/.
[22] GESCO Aktiengesellschaft, *Consolidated Financial Statements for the Financial Year from 1 April 2019 to 31 December 2019*, Bundesanzeiger, July 2, 2020, https://www.bundesanzeiger.de/pub/de/start?17 (last visited Mar. 25, 2025).

62. GESCO Group is headquartered in Germany and is engaged in the acquisition of industrial companies.[23] GESCO Group's 2020 consolidated financial report indicates that they have controlling equity interests in the following entities, as of December 31, 2020:[24]

i. Alro GmbH, located in Wuppertal, Germany;

ii. AstroPlast Kunststofftechnik GmbH & Co. KG, located in Meschede, Germany;

iii. AstroPlast Verwaltungs GmbH, located in Meschede, Germany;

iv. CFRP CNC Manufacturing Technology Kriftel GmbH, located in Kriftel, Germany;

v. Dömer GmbH & Co. KG Stamping and Forming Technology, located in Lennestadt, Germany;

vi. Dömer GmbH, located in Lennestadt, Germany;

vii. Dörrenberg Edelstahl GmbH, located in Engelskirchen, Germany;

viii. Dörrenberg Tratamientos Térmicos SL, located in Alasua/Navarra, Spain;

ix. Dörrenberg Special Steels PTE. Ltd., located in Singapore;

x. Dörrenberg International PTE. Ltd., located in Singapore;

xi. Doerrenberg Special Steels Taiwan Ltd., located in Tainan, Taiwan;

xii. Middle Kingdom Special Steels PTE Ltd., located in Singapore;

xiii. Jiashan Doerrenberg Mold & Die Trading Co., located in Jiashan, China;

xiv. Doerrenberg Specialty Steel Corp., located in Macedonia, Ohio, USA;

xv. Frank Walz- und Schmiedetechnik GmbH, located in Hatzfeld, Germany;

---

[23] GESCO Aktiengesellschaft, *Consolidated Financial Statements for the Financial Year from 1 April 2019 to 31 December 2019*, Bundesanzeiger, July 2, 2020, https://www.bundesanzeiger.de/pub/de/start?17 (last visited Mar. 25, 2025).
[24] GESCO Aktiengesellschaft, *Annual and Consolidated Financial Statements for the Financial Year from 1 January 2020 to 31 December 2020*, Bundesanzeiger, June 25, 2021, https://www.bundesanzeiger.de/pub/de/start?17 (last visited Mar. 25, 2025).

xvi.      Frank-Hungaria Kft., located in Ozd, Hungary;

xvii.     Frank Lemek's Tow, located in Ternopil, Ukraine;

xviii.    OOO Frank RUS, located in Oryol, Russia;

xix.      Franz Funke Zerspanungstechnik GmbH & Co. KG, located in Sundern, Germany;

xx.       Franz Funke Verwaltungs GmbH, located in Sundern, Germany;

xxi.      Georg Kesel GmbH & Co. KG, located in Kempten, Germany;

xxii.     Kesel International GmbH, located in Kempten, Germany;

xxiii.    Georg Kesel Machinery (Beijing) Co., Ltd., located in Beijing, China;

xxiv.     Georg Kesel Machinery (Jiashan) Co., Ltd., located in Jiashan, China;

xxv.      Kesel North America, LLC, located in Beloit, Wisconsin, USA;

xxvi.     Kesel & Probst Verwaltungs-GmbH, located in Kempten, Germany;

xxvii.    Haseke GmbH & Co. KG, located in Porta Westfalica, Germany;

xxviii.   Haseke Beteiligungs-GmbH, located in Porta Westfalica, Germany;

xxix.     Hubl GmbH, located in Vaihingen/Enz, Germany;

xxx.      MAE Machine and Apparatus Construction Götzen GmbH, located in Erkrath, Germany;

xxxi.     MAE International GmbH, located in Erkrath, Germany;

xxxii.    MAE Machines (Beijing) Co., Ltd., located in Beijing, China;

xxxiii.   MAE Amerika GmbH, located in Erkrath, Germany;

xxxiv.    MAE-EITEL INC., located in Orwigsburg, Pennsylvania, USA;

xxxv.     Model Technology Mold Construction GmbH, located in Sömmerda, Germany;

xxxvi.    Model Technology Holding GmbH, located in Sömmerda, Germany;

xxxvii.   Molineus & Co. GmbH + Co. KG, located in Wuppertal, Germany;

xxxviii.   Grafic Beteiligungs-GmbH, located in Wuppertal, Germany;

xxxix.   Paul Beier GmbH & Co. KG, located in Kassel, Germany;

xl.   Paul Beier Verwaltungs-GmbH, located in Kassel, Germany;

xli.   Pickhardt & Gerlach GmbH & Co. KG, located in Finnentrop, Germany;

xlii.   Hekhorn Verwaltungs-GmbH, located in Finnentrop, Germany;

xliii.   Hekhorn Immobilien GmbH, located in Finnentrop, Germany;

xliv.   Q-Plast GmbH & Co. Plastics Processing, located in Emmerich, Germany;

xlv.   Q-Plast Beteiligungs-GmbH, located in Emmerich, Germany;

xlvi.   Setter GmbH & Co. Paper Processing, located in Emmerich, Germany;

xlvii.   Setter GmbH, located in Emmerich, Germany;

xlviii.   HRP-Leasing GmbH, located in Emmerich, Germany;

xlix.   Setter International GmbH, located in Emmerich, Germany;

l.   Setterstix Inc., located in Cattaraugus, New York, USA;

li.   SQG Verwaltungs GmbH, located in Emmerich, Germany;

lii.   Setterstix de México SA DE CV, located in San Luis Potosi, Mexico;

liii.   Sommer & Strassburger Edelstahlanlagenbau GmbH & Co. KG, located in Bretten, Germany;

liv.   So-Stra Verwaltungs-GmbH, located in Bretten, Germany;

lv.   SVT GmbH, located in Schwelm, Germany;

lvi.   IV Industrieverwaltungs GmbH & Co. KG, located in Wuppertal, Germany;

lvii.   MV Anlagen GmbH & Co. KG, located in Wuppertal, Germany;

lviii.   MV Anlagen GmbH & Co. KG, located in Wuppertal, Germany;

lix.   IMV Verwaltungs GmbH, located in Wuppertal, Germany;

lx.    VWH GmbH, located in Herschbach, Germany;

lxi.    WBL Holding GmbH, located in Laichingen, Germany;

lxii.    Toolmaking Laichingen GmbH, located in Laichingen, Germany;

lxiii.    Toolmaking Leipzig GmbH, located in Leipzig, Germany;

lxiv.    TM Erste Grundstücksgesellschaft mbH, located in Wuppertal, Germany;

lxv.    Doerrenberg Special Steels Korea Co. Ltd, located in Jeongwang-dong, South Korea; and

lxvi.    Connex SVT Inc., located in Houston, Texas, USA.

63.    On information and belief, Setterstix, MAE Amerika, and the other entities listed in ¶ 62, *supra*, qualify as "affiliates" for purposes of the PPP Loan program under one or more of the alternative definitions provided in 13 C.F.R. § 121.301(f).

## B.    DEFENDANTS' FALSE STATEMENTS TO OBTAIN PPP LOANS

### 1.    SETTERSTIX'S FIRST DRAW LOAN

64.    In 2020, Setterstix submitted a borrower application for a First Draw PPP loan.

65.    Setterstix submitted its borrower application, SBA Form 2483, to Harvest Small Business Finance, LLC ("HSBF") at 24422 Avenida de la Carlota Suite 400, Laguna Hills, CA 92653.

66.    In its SBA Form 2483, Setterstix listed its address as 261 South Main St., Cattaraugus, NY 14719.

67.    In its SBA Form 2483, Setterstix certified that it and its affiliates met the small business size standard by having (1) no more than 500 employees, (2) meeting the SBA industry size standard, or (3) meeting the SBA alternative size standard.

68.    Setterstix is classified under NAICS code 322299 for the purposes of its First Draw PPP loan, which covers the industry for All Other Converted Paper Product Manufacturing. The

SBA industry size standard for NAICS code 322299 is 500 employees. *See* 13 C.F.R. § 121.201 (effective Nov. 20, 2019 to May 1, 2022).

69.     In its SBA Form 2483, Setterstix represented that it and its affiliates had 57 employees—under the 500-employee limit and the 500-employee SBA industry size standard needed to be eligible to apply.

70.     Setterstix's certification in SBA Form 2483 that it met the size standards for a First Draw PPP loan was false. Setterstix and its affiliates had (1) far more than 500 employees in 2019 and 2020; (2) a maximum tangible net worth far more than $15,000,000; and (3) an average net income that was greater than $5,000,000 for the two full fiscal years prior to the date of Setterstix's First Draw PPP loan application.

71.     Setterstix deliberately ignored the fact that, together with its affiliates, it did not meet the SBA size standards for obtaining a First Draw PPP loan. Setterstix signed its false SBA Form 2483 with knowledge of, or reckless disregard for, the truth.

72.     On or about June 19, 2020, Setterstix was approved for a First Draw PPP loan in the amount of $571,862 by lender HSBF.

73.     The U.S. government paid lender HSBF a lender's processing fee of 3% of the $571,862 loan, in the amount of $17,155.86.[25]

74.     On or about January 5, 2022, the U.S. government forgave 100% of Setterstix's First Draw PPP loan, plus interest, in the amount of $580,526.10.

### 2. MAE AMERIKA'S SECOND DRAW LOAN

75.     In 2020, MAE Amerika submitted a borrower application for a First Draw PPP loan in the amount of $731,600 by lender Mid Penn Bank.

---

[25] Paycheck Protection Program (PPP) Information Sheet: Lenders,
https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

76.     On or about July 26, 2021, the U.S. government forgave 100% of MAE Amerika's First Draw PPP loan, plus interest, in the amount of $735,014.

77.     In 2021, MAE Amerika applied for a Second Draw PPP loan.

78.     MAE Amerika submitted its borrower application form, SBA Form 2483-SD, to Mid Penn Bank at 349 Union St., Millersburg, PA 17061.

79.     In its Form 2483-SD, MAE Amerika listed its address as 97 Pinedale Industrial Rd., Orwigsburg, PA 17961, which is also the address for MAE Eitel, Inc..[26]

80.     In its SBA Form 2483-SD, MAE Amerika represented that it and its affiliates had 31 employees—under the 300-employee limit needed to be eligible to apply.

81.     MAE Amerika's representation in SBA Form 2483-SD regarding the total number of its and its affiliates' employees was false. MAE Amerika and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

82.     MAE Amerika deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw PPP loan. MAE Amerika signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

83.     MAE Amerika also certified in SBA Form 2483-SD that it was "not a business concern or entity (a) for which an entity . . . that has significant operations in the People's Republic of China . . . owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity . . . ."

---

[26] MAE Eitel's Website – Contact, https://mae-eitel.com/contact-us/.

84.     MAE Amerika's certification in SBA Form 2483-SD that it was not a business concern owned or held by an entity that has "significant operations" in China was false. MAE Amerika's parent company has significant operations in China.

85.     MAE Amerika deliberately ignored the fact that its parent company has significant operations in China that made MAE Amerika ineligible for a Second Draw PPP loan. MAE Amerika signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

86.     On or about February 3, 2021, MAE Amerika was approved for a Second Draw PPP loan in the amount of $731,600 by lender Mid Penn Bank.

87.     The U.S. government paid lender Mid Penn Bank a lender's processing fee of 3% of the $731,600 loan, in the amount of $21,948.[27]

88.     On or about July 26, 2021, the U.S. government forgave 100% of MAE Amerika's Second Draw PPP loan, plus interest, in the amount of $735,014.13.

**C.     EVIDENCE OF NUMBER OF EMPLOYEES**

89.     In its SBA Form 2483 and SBA Form 2483-SD, a company must include "the employees of its domestic and foreign affiliates" in calculating its number of employees. *See* 13 C.F.R. § 121.106(b)(1).

90.     The 2020 consolidated financial report for Defendants' parent company GESCO Group indicates that the companies in Defendants' corporate group collectively had an average of 2,711 employees in 2019 and an average of 2,620 employees in 2020.[28]

---

[27] Paycheck Protection Program (PPP) Information Sheet: Lenders,
     https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.
[28] GESCO Aktiengesellschaft, *Annual and Consolidated Financial Statements for the Financial Year from 1 January 2020 to 31 December 2020*, Bundesanzeiger, June 25, 2021,
https://www.bundesanzeiger.de/pub/de/start?17 (last visited Mar. 25, 2025).

91.    The 2021 consolidated financial report for Defendants' parent company GESCO Group indicates that the companies in Defendant's corporate group collectively had 1,783 employees employed in the continuing operations of GESCO Group.[29]

92.    If Defendants had counted their affiliates' employees in their respective First Draw and Second Draw PPP loan applications, they would have reported far more than the 500- and 300-employee limits in each application.

93.    On information and belief, Defendants' and their affiliates' payroll records from 2019, 2020, and 2021 will confirm what Defendants always knew—that they and their affiliates collectively employed well over 500 and 300 employees throughout the time period 2019–2021.

### D.    EVIDENCE OF TANGIBLE NET WORTH & AVERAGE NET INCOME GREATER THAN THE ALTERNATIVE SIZE STANDARD

94.    Defendant Setterstix was not eligible for its First Draw PPP loan under the SBA's alternative size standard. That standard required Setterstix to show that it and its affiliates had both (i) tangible net worth of not more than $15 million, and (ii) average net income of less than $5 million for the two fiscal years before the date of Setterstix's 2020 application for a First Draw PPP loan.

95.    Setterstix and its affiliates had a maximum tangible net worth of more than $15 million in FY 2019 and FY 2020. The 2020 consolidated financial report for Setterstix's parent company GESCO Group demonstrates a maximum tangible net worth of approximately **$232.84 million** in FY 2019 and **$218.69 million** in FY 2020.[30] These figures are far above the $15 million dollar threshold.

---

[29] GESCO Aktiengesellschaft, *Annual and Consolidated Financial Statements for the Financial Year from 1 January 2021 to 31 December 2021*, Bundesanzeiger, May 23, 2022, https://www.bundesanzeiger.de/pub/de/start?17 (last visited Mar. 25, 2025).
[30] GESCO Aktiengesellschaft, *Annual and Consolidated Financial Statements for the Financial Year from 1 January 2020 to 31 December 2020*, Bundesanzeiger, June 25, 2021, https://www.bundesanzeiger.de/pub/de/start?17 (last visited Mar. 25, 2025).

| Unit: EUR (in Thousands) | As of December 31, 2020 | As of December 31, 2019 |
|---|---|---|
| **Total Assets** | **390,821** | **506,099** |
| Less: Total Liabilities | (154,578) | (244,805) |
| **Net Worth** | **236,243** | **261,294** |
| Less: Intangible Assets | (40,076) | (47,414) |
| Less: Shares In Companies (Equity Method) | (1,868) | (1,635) |
| Less: Deferred Tax Assets | (2,506) | (4,318) |
| **Tangible Net Worth (EUR)** | **191,793** | **207,927** |
| IRS Average Exchange Rate | 1 EUR = 1.140251 USD | 1 EUR = 1.119821 USD |
| **Tangible Net Worth (USD) in Thousands** | **$218,692** | **$232,841** |

96.     Given this tangible net worth, Setterstix could not have qualified for a First Draw PPP loan under the SBA's alternative size test.

97.     Setterstix and its affiliates had an average net income of more than $5 million for FY 2018 and FY 2019. The 2019 consolidated financial report for Defendant's parent company GESCO Group indicates the companies in the Defendant's corporate group collectively generated EUR 25.58 million of consolidated net profit in FY 2018, and EUR 13.73 million of consolidated net profit in FY 2019.[31]

98.     According to the IRS average exchange rate in 2018, 1 EUR = 1.179245 USD in 2018, implying that Setterstix corporate group collectively generated **$30.17 million** in FY 2018.[32]

99.     According to the IRS average exchange rate in 2019, 1 EUR = 1.119821 USD in 2019, implying that Setterstix's corporate group collectively generated **$15.38 million** in FY 2019.[33]

---

[31] GESCO Aktiengesellschaft, *Consolidated Financial Statements for the Financial Year from 1 April 2019 to 31 December 2019*, Bundesanzeiger, July 2, 2020, https://www.bundesanzeiger.de/pub/de/start?17 (last visited Mar. 25, 2025).
[32] IRS – Yearly average currency exchange rates, https://www.irs.gov/individuals/international-taxpayers/yearly-average-currency-exchange-rates.
[33] IRS – Yearly average currency exchange rates, https://www.irs.gov/individuals/international-taxpayers/yearly-average-currency-exchange-rates.

100.    Therefore, Setterstix corporate group collectively generated an average of **$22.78 million** in net income for the two fiscal years before the date of Defendant's 2020 First Draw PPP loan application. This figure is far above the $5 million dollar threshold.

101.    Given this average net income, Defendant Setterstix could not have qualified for a First Draw PPP loan under the SBA's alternative size test.

### E.    EVIDENCE OF SIGNIFICANT OPERATIONS IN CHINA

102.    Defendants are owned by GESCO Group.

103.    GESCO Group owns and controls numerous subsidiaries located in the PRC, as listed in ¶ 62, *supra*.

104.    Thus, Defendants' parent has significant operations in China, thereby disqualifying MAE Amerika from the Second Draw PPP loan program.

### FIRST CAUSE OF ACTION

### Submitting False Claims for Payment
### 31 U.S.C. § 3729(a)(1)(A)

105.    Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

106.    Defendants violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and/or causing to be presented to the lender claims for approval of First and Second Draw PPP loans.

107.    The Defendants' knowingly false claim in its SBA Form 2483 and/or SBA Form 2483-SD was material to the lender's decisions to issue the First and Second Draw PPP loans and was material to the SBA's decisions to forgive those loans and repay the lender.

108.    But for Defendants' knowingly false claims, the lender would not have issued the loans and the SBA would not have forgiven them.

109.    The First and Second Draw PPP loans that Defendants obtained was money that was intended by the Government to be spent or used to advance the Government's program and interest in assisting qualified and eligible small businesses to survive the COVID-19 epidemic and to continue to employ their workers.

110.    The First and Second Draw PPP loans that Defendants obtained was money that the Government effectively and in practice provided to the lender, by means of the Government's 100% guarantee to the lender of repayment by the Government in the case of default by the borrower.

111.    The Government later reimbursed the lender 100% of the amounts of Defendants' First and Second Draw PPP loans, with interest.

## SECOND CAUSE OF ACTION

### Creating a False Record or Statement Material to a False Claim
### 31 U.S.C. § 3729(a)(1)(B)

112.    Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

113.    Defendants violated 31 U.S.C. § 3729(a)(1)(B) by knowingly making or causing to be made false records and statements—namely, its SBA Forms 2483 and SBA Forms 2483-SD and included certifications—to support false claims submitted to the lender for approval of First and Second Draw PPP loans.

114.    Defendants' knowingly false records and statements were material to the lender's decisions to issue the First and Second Draw PPP loans and were material to the SBA's decisions to forgive each loan and repay the lender.

115.    But for Defendants' knowingly false records and statements, the lender would not have issued the loans and the SBA would not have forgiven them.

## THIRD CAUSE OF ACTION

### Improperly Avoiding an Obligation to Pay or Transmit Money

### 31 U.S.C. § 3729(a)(1)(G)

116.    Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

117.    Defendants violated 31 U.S.C. § 3729(a)(1)(G) by knowingly and improperly avoiding Defendants' obligation to pay or transmit money to the SBA—namely, the money Defendants received from the SBA in forgiveness for Defendants' First and Second Draw PPP loans.

118.    Defendants knew it improperly received money from the SBA when the SBA forgave Defendants' First and Second Draw PPP loans.

119.    Defendants had an obligation to pay back the SBA the full amount Defendants received in forgiveness of the First and Second Draw PPP loans.

120.    Defendants knew of their obligation to pay back the SBA.

121.    Defendants improperly avoided their obligation to pay back the SBA.

### PRAYER FOR RELIEF

**WHEREFORE**, Relator requests judgment against Defendants for: (i) three times the amount of damages that the United States has sustained (including the full amount of the forgiven First and Second Draw PPP loans and interest thereon, plus all processing fees paid by the Government); (ii) the maximum civil penalties allowed by law; (iii) an award to Relator for the maximum allowed under 31 U.S.C. § 3730(d); (iv) an award of attorney's fees, costs, and expenses; (v) interest as provided by law; and (vi) any other relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a

trial by jury.

Date: May 15, 2025

Respectfully submitted,

Terrance P. Flynn, Esq.
**HARRIS BEACH MURTHA CULLINA PLLC**
726 Exchange Street, Suite 900
Buffalo, New York 14210
Telephone: (716) 200-5050
Facsimile: (716) 200-5201
tflynn@harrisbeachmurtha.com

*Attorneys for Relator Verity Investigations, LLC*

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

**25 CV 418**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA, ex rel. VERITY INVESTIGATIONS, LLC

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Terrance P. Flynn. Harris Beach Murtha. 726 Exchange Street, Suite 900 Buffalo, NY 14210. (716) 200-5050

## DEFENDANTS

SETTERSTIX INC.; MAE-AMERIKA GMBH

County of Residence of First Listed Defendant  **Cattaraugus County, NY**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☒ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
False Claims Act, 31 U.S.C. §§ 3279-33. FILED UNDER SEAL PURSUANT TO STATUTE.

Brief description of cause:
Defendants knowingly presented and/or caused to be presented false claims for approval of loans.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
$3.9M+

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE  John Sinatra
DOCKET NUMBER  1:25-cv-405

DATE  May 15, 2025

SIGNATURE OF ATTORNEY OF RECORD
*Terance Flynn*

## FOR OFFICE USE ONLY

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____